## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| X-TRA LIGHT MANUFACTURING PARTNERSHIP, LTD. | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. H-06-3134 |
| | § | |
| MIDWEST ILLUMINATION, INC. & TERRY SUMMERLEE, INDIVIDUALLY | § | |
| | § | |
| *Defendants*. | § | |

### MEMORANDUM AND ORDER

Before the court is defendant Terry Summerlee's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2). Dkt. 4. Summerlee presents the court with the issue of whether his contacts with the state of Texas are sufficient to allow the court to properly exercise personal jurisdiction over him. After considering Summerlee's motion (Dkt. 4), plaintiff's response (Dkt. 15), Summerlee's reply (Dkt. 18), and the applicable law, the court concludes that the motion should be DENIED.

### I. BACKGROUND

Plaintiff X-Tra Light Manufacturing, Inc. ("X-Tra Light") manufactures energy efficient lighting products for sale directly to wholesalers and customers. Defendant Midwest Illumination Inc. ("Midwest") is a lighting consultant that designs, engineers, and installs lighting projects intended to reduce energy usage for clients. Midwest purchased products from X-Tra Light for installation at customers' sites and performed work for X-Tra light as part of a project for General Electric. X-Tra Light alleges that Midwest breached its contract with X-Tra Light through failure to pay amounts owed for products that were ordered. The plaintiff also alleges that Midwest and

1

defendant Terry Summerlee, President and CEO of Midwest, made false and defamatory statements about X-Tra Light and tortiously interfered with X-Tra Light's contracts and business relationships. Midwest responded to the complaint by counterclaiming on contract theories and raising allegations of fraud on the part of X-Tra Light's employees. Defendant Terry Summerlee has not yet responded to plaintiff's complaint.

## II. APPLICABLE LAW

### A. Burden of Proof

When the defendant contests personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident. *See Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982). The plaintiff need only establish personal jurisdiction by a prima facie showing of evidence. *Id.* Conflicts between the affidavits submitted on the question of personal jurisdiction are thus resolved in favor of the plaintiff. *Id.* The prima facie showing may be made through the use of affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery. *See Washington v. Norton Mfg. Co.*, 588 F.2d 441, 443 (5th Cir.), *cert. denied*, 442 U.S. 942, 99 S. Ct. 2886 (1979).

### B. Personal Jurisdiction

In a suit based on diversity of citizenship, personal jurisdiction over a nonresident defendant may be appropriate when "(1) the nonresident defendant is amenable to service of process under the law of the forum state; and (2) the exercise of jurisdiction under state law comports with the due process clause of the Fourteenth Amendment." *Stuart v. Spademan*, 772 F.2d 1185, 1189 (5th Cir.1985). The Texas long-arm statute has been held to extend to the limits of due process. *See Helicopteros Nacionales de Colom., S.A. v. Hall*, 638 S.W.2d 870, 872 (Tex.1982), *rev'd on other grounds*, 466 U.S. 408, 104 S. Ct. 1868 (1984). Therefore, the inquiry is the same under each prong

and collapses to a single analysis of the due process requirements.  The Due Process Clause allows a state to obtain personal jurisdiction over a defendant if "[1] the defendant has certain minimum contacts with [the forum] . . . [and 2] the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945).

The first factor requires a showing that the defendant has sufficient contacts with the forum to establish that the defendant "purposefully avail[ed] [him]self of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174, 2182 (1985).  The analysis can proceed in two directions, depending on the relation of the contacts to the alleged controversy.  *See Helicopteros Nacionales*, 466 U.S. at 408.  "General jurisdiction" refers to personal jurisdiction based on a defendant's contacts with the forum that are unrelated to the controversy. *Id.* at 415 n.9. To exercise general jurisdiction, the contacts within the state must be "sufficiently systematic and continuous as to support a reasonable exercise of jurisdiction." *Stuart*, 772 F.2d at 1191.[1]

"Specific jurisdiction" is personal jurisdiction based on contacts with the forum that are related to the particular controversy.  *Helicopteros Nacionales*, 466 U.S. at 411 n.8.  A single purposeful contact may provide an appropriate basis for specific jurisdiction when the cause of action arises from such contact.  *Micromedia v. Automated Broad. Controls*, 799 F.2d 230, 234 (5th Cir.1984).  In order to exercise specific jurisdiction, a relationship among the defendant, the forum, and the litigation must exist so as not to offend traditional notions of fair play and substantial justice.

---

[1]  Neither party contends that Summerlee had contacts with Texas other than those connected with this litigation.  These contacts were not "systematic and continuous," *see Stuart*, 772 F.2d at 1191, and thus general jurisdiction is not an issue for purposes of this motion.

3

*Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 777 (5th Cir.1986), *cert. denied*, 481 U.S. 1015, 107 S. Ct. 1892 (1987).

After establishing the defendant's contacts with the state, the court may evaluate several additional factors, including: (1) the burden on the defendant, (2) the forum State's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, (5) and the shared interest of the several States in furthering fundamental substantive social policies. *Burger King Corp.*, 471 U.S. at 477; *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S. Ct. 559, 564 (1980). These considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required. *See Burger King Corp.*, 471 U.S. at 477.

### 1. Summerlee's Contacts

Summerlee's contacts with Texas may arise in connection with the alleged contract dispute and tortious conduct. Summerlee's contacts with the state are considered as a whole, and if the contacts are sufficient, then personal jurisdiction may be exercised over the defendant. *Int'l Shoe Co.,* 326 U.S. at 316.

Summerlee argues that his contacts within the state of Texas occurred only as a part of his official responsibilities for Midwest. As a result, Summerlee claims that the fiduciary shield doctrine prevents the acts of the company from being ascribed to him personally. This doctrine holds that an individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over that individual though the state has in personam jurisdiction over the corporation. *See Stuart*, 772 F.2d at 1197 (preventing the defendant's business-related contacts with Texas from being considered in the minimum contacts analysis as an individual defendant); *Lehigh*

*Valley Indus., Inc. v. Birenbaum*, 389 F. Supp. 798, 803-04 (S.D.N.Y.), *aff'd*, 527 F.2d 87 (2d Cir.1975); *see also Wilshire Oil Co. v. Riffe*, 409 F.2d 1277 (10th Cir. 1969).  This doctrine would insulate Summerlee from personal jurisdiction based on those activities carried on as an agent of Midwest.[2]

Plaintiff argues that an exception to the fiduciary shield doctrine exists for causes of action sounding in tort. The analysis begins with *Calder v. Jones*, 465 U.S. 783 (1984).  In *Calder*, the plaintiff filed suit in California against a Florida corporation and several employees in their individual capacity for a story that was published and eventually distributed in California.  With respect to the individual defendants, the court stated that "[p]etitioners are correct that their contacts with California are not to be judged according to their employer's activities there. On the other hand, their status as employees does not somehow insulate them from jurisdiction. Each defendant's contacts with the forum State must be assessed individually."  *Id.* at 790.  The Court found that the exercise of personal jurisdiction over the individual defendant by a California court was proper based on the tortious nature of the alleged harm.  *Id.* at 791.

The Fifth Circuit discussed the limits of *Calder* in *Southmark Corp. v. Life Investors, Inc*. 851 F.2d 763 (5th Cir. 1988).  The court said "in *Calder*, the Supreme Court held that when an alleged tort-feasor's intentional actions are expressly aimed at the forum state, and the tort-feasor knows that the brunt of the injury will be felt by a particular resident in the forum, the tort-feasor must reasonably anticipate being haled into court there to answer for its tortious actions.  This holds

---

[2]  Summerlee claims that he had no contacts with Texas other than those associated with his employment with Midwest.  Dkt. 4, Ex. 2 at 2.  X-Tra Light argues that Summerlee traveled to Texas in order to discuss a potential joint venture for providing turn-key lighting services. Dkt. 15, Ex. 2  at 1.  However, the negotiations never resulted in the formation of a joint venture.  *Id.* at 2. No other contacts with Texas were claimed by X-Tra Light aside from those arising out of Summerlee's employment.

true even if the tort-feasor's conduct occurs in a state other than the forum state." *Id*. at 772 (citations omitted). The *Southmark* court went on to hold that personal jurisdiction was improper due to a lack of a connection between the tortious conduct and the forum state. *Id.* Specifically, the court found a lack of tortious interference with a contract that was either to be formed or performed in the forum state, and a lack of any injury occurring within the forum state. *Id.* at 772-73.

The result of *Southmark* can be explained when the Texas long-arm statute is examined. The statute defines conducting business as including, among other acts, committing a tort, in whole or in part, within the state of Texas. TEX. CIV. PRAC. & REM. CODE ANN. § 17.042 (1997). This statute has been interpreted as allowing an exercise of jurisdiction, even over an individual acting within his role as an employee, for suits alleging tortious interference with contract. *See Union Carbide v. UGI Corp.*, 731 F.2d 1186, 1190 (5th Cir. 1984) (allowing an exercise of personal jurisdiction based on "the act having tortious consequences in Texas"). When considered in light of *Southmark*, this means that if the tortious conduct interferes with a contract or results in injury in the forum state, a court in the forum state may exercise personal jurisdiction over the tortfeasor.

In this case, Summerlee argues that the exception to the fiduciary shield doctrine is inapplicable because there is no evidence that he directed the alleged tortious conduct to Texas. Dkt. 18 at 3. The plaintiff responds that the tortious conduct was intended to harm X-Tra Light, and that the defendant knew or should have known that because X-Tra Light was located in Texas, the brunt of the harm would be felt there. Dkt. 15 at 6-7. Due to its location in Texas, the plaintiff contends that any potential contracts would have been formed and performed, at least in part, in Texas. Therefore, any tortious interference with these contracts would result in harm within the forum state. *Id.*

When there are conflicts between the evidence presented on the issue of personal jurisdiction, they must be resolved in favor of the plaintiff. *Wyatt*, 686 F.2d at 280. The facts would tend to indicate that Summerlee knew through his dealings with the plaintiff that X-Tra Light was an entity located in Texas. Any tortious acts committed by Summerlee could be expected to harm X-Tra Light in Texas. Further, the specific acts of defamation and tortious interference with contract alleged by X-Tra Light could be expected to produce an injury at the place in which X-Tra Light formed and performed its contracts. While Summerlee claims that he did not intentionally direct any harm towards Texas, the alleged tortious acts were directed towards X-Tra Light, which is located in Texas. As a result, the alleged acts could harm both the plaintiff's existing and potential contracts that would be formed and performed in Texas.

The facts alleged by the plaintiff present prima facie evidence that Summerlee, in his personal capacity, has minimum contacts with the state of Texas. The fiduciary shield doctrine does not protect the defendant under the facts alleged by X-Tra Light. Further, the allegations of harm within the forum state and the interference with contracts within the forum state are sufficient to satisfy the requirements under both *Southmark* and *Union Carbide*. Under the allegations in this case, an exercise of personal jurisdiction over Summerlee is appropriate.

## *2. Secondary Considerations*

The court may consider additional factors in weighing whether a finding of personal jurisdiction should be made. These considerations can serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required. *See Burger King Corp.*, 471 U.S. at 477. The first factor bears on the burden placed on the defendant to litigate in the forum state. Summerlee claims that forcing him to travel to Texas in his individual capacity would subject him to hardship. Dkt. 4 at 6-7. The plaintiff notes that as an employee and

7

key witness for Midwest, Summerlee will most likely be present at the trial anyway.  Dkt. 15 at 9-10.
Due to Summerlee's role in the case and likelihood that he will be present at trial even if he is not
a party, this factor weighs in favor of exercising personal jurisdiction over Summerlee.

The next two factors are related.  The second factor involves the forum state's interest in
adjudicating the dispute while the third factor covers the plaintiff's interest in obtaining convenient
and effective relief.  Since the plaintiff, a Texas limited partnership, alleges that it was harmed in
Texas and the forum state has an interest in adjudicating harms within its borders, the forum state's
and the plaintiff's interests may be very similar.  The plaintiff alleges that the actions of Summerlee
were purposeful, directed at Texas, and sufficiently related to this cause of action.  Also,  Texas has
a "significant interest in redressing injuries that actually occur within the [s]tate." *Keeton v. Hustler*
*Magazine, Inc.,* 465 U.S. 770, 798, 104 S. Ct. 1473, 1479 (1984).  As a result, these two factors
weigh in favor of exercising personal jurisdiction over Summerlee.

The final two factors involve the judicial system's interest in obtaining an efficient resolution
of the dispute and the interest of the several states in furthering fundamental substantive social
policies.  If personal jurisdiction were denied, then the same causes of action, including the same
witnesses and facts, would have to be tried twice in two different forums.  Alternatively, if a second
case was not brought against Summerlee, then the interests of the several states may not be served
due to a lack of enforcement of the tort laws.  Therefore, exercising personal jurisdiction over
Summerlee will achieve the most efficient judicial resolution of this dispute.  These two factors both
weigh in favor of exercising personal jurisdiction over Summerlee.

Consideration of these secondary factors reinforces the finding that personal jurisdiction can
be exercised over Summerlee based on the contacts arising from the tort causes of action.

8

### III. Conclusion

The fiduciary shield doctrine prevents an exercise of personal jurisdiction over Summerlee based on the contacts arising from the contract causes of action.  In this respect, the only contacts Summerlee had with Texas were in his capacity as an agent for Midwest.  However, the court can properly exercise personal jurisdiction over Summerlee based on his conduct with respect to the tort causes of action.  Utilizing the tort-based exception to the fiduciary shield doctrine, the court can exercise personal jurisdiction over Summerlee because his alleged conduct may have affected a Texas entity and produced harm within the forum.  Thus, Summerlee has minimum contacts with Texas and, as stated above, the exercise of personal jurisdiction over Summerlee does not offend traditional notions of fair play and substantial justice.  Summerlee's motion to dismiss for lack of personal jurisdiction is DENIED.

It is so ORDERED.

Signed at Houston, Texas on February 12, 2007.

_____
Gray H. Miller
United States District Judge

9